1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALICIA N. ROBINS; JAMES T. ROBINS; BETTY D. ROBINS, <br><br> Plaintiffs, <br><br> vs. <br><br> THE WOLF FIRM, a Law corporation; FIRST UNITED MORTGAGE; CHICAGO TITLE; COUNTRYWIDE HOME LOANS; WASHINGTON FEDERAL SAVINGS; DOES I–x; ROES I–X, inclusive, <br><br> Defendants. | Case No.: 2:10-cv-0424-RLH-PAL <br><br> **O R D E R** <br><br> (Motion to Dismiss and Motion for Expungement of the Notice of Lis Pendens–#7) |

18    Before the Court is Defendants The Wolf Firm and Washington Federal Savings'

19 **Motion to Dismiss and For Expungement of the Notice of Lis Pendens** (#7), filed April 19,

20 2010.  The Court has also considered Plaintiffs Alicia Robins, James Robins, and Betty Robins'

21 ("the Robins") Opposition (#9), filed May 6, 2010, and Defendants' Reply (#10), filed May 13,

22 2010.

23                                                    **BACKGROUND**

24    On June 25, 2004, the Robins purchased the property located at 11745 Villa

25 Malaparte Avenue in Las Vegas, Nevada through a lender that is not a party to this litigation.  The

26 Robins subsequently refinanced their mortgage with Defendant Washington Federal Savings.  As

1  with many mortgage loans made during this time, the Robins loan was later transferred to various

2  entities as part of a collection of mortgage-backed securities.  The Robins made their mortgage

3  payments for several years before falling behind on their payments in early 2009.  On July 24,

4  2009, Defendant The Wolf Firm, the Trustee on the mortgage loan, filed a Notice of Breach and

5  Default and an Election to Sell with the Clark County recorder's office.  Several months later, on

6  February 26, 2010, The Wolf Firm filed a Notice of Trustee's Sale with the recorder's office.

7         On March 25, 2010, the Robins filed suit in this Court against The Wolf Firm, First

8  United Mortgage, Chicago Title, Countrywide Home Loans, and Washington Federal Savings.

9  The Robins allege claims for (1) misrepresentation and fraud by omission; (2) quiet title; (3)

10 contractual breach of the duty of good faith and fair dealing; (4) tortious breach of the duty of good

11 faith and fair dealing; (5) civil conspiracy; (6) civil RICO and racketeering; (7) unjust enrichment;

12 (8) fraud by obtaining signature by false pretenses; and (9) declaratory relief.  Now before the

13 Court is The Wolf Firm and Washington Federal Savings' Motion to Dismiss and for the

14 Expungement of the Notice of Lis Pendens.  For the reasons discussed below, the Court grants

15 Defendants' Motion, dismisses all remaining Defendants, and closes this case.

**DISCUSSION**

16

17 **I.     Legal Standard**

18         "A pleading that states a claim for relief must contain . . . a short and plain

19 statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in

20 order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which

21 it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atl. Corp.*

22 *v. Twombly*, 550 U.S. 544 (2007).  While a pleading generally need not contain detailed

23 allegations, it must allege sufficient facts "to raise a right to relief above the speculative level."

24 *Twombly*, 550 U.S. at 555.  A party may challenge the sufficiency of a pleading by motion under

25 Rule 12(b)(6). In ruling on a 12(b)(6) motion, a court assumes all factual allegations are true and

26 construes them in the light most favorable to the nonmoving party. *Epstein v. Wash. Energy Co.*,

AO 72
(Rev. 8/82)

1   83 F.3d 1136, 1140 (9th Cir. 1996).  However, a court does not assume the truth of legal

2   conclusions merely because the plaintiff casts them in the form of factual allegations.  *Warren v.*

3   *Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  A court should dismiss a claim

4   if it lacks a cognizable legal theory or if there are insufficient facts alleged under a cognizable legal

5   theory. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).  Although

6   this burden is not onerous, *id.*, "[t]o survive a motion to dismiss, a complaint must contain

7   sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"

8   *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has

9   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

10  reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**II.    Motion to Dismiss**

12          The Court considers the Robins' claims as follows.

**A.    Misrepresentation and Fraud by Omission and Fraud by Obtaining Signature by False Pretenses**

14          The Robins allege Defendants committed fraud by "failing to disclose to the

15  Plaintiffs the[ir] predatory, unethical and unsound and unfair lending and foreclosure practices,

16  and bonuses and inflated salaries paid pursuant thereto."  (Dkt. #1, Compl. ¶ 47.)  The Robins

17  further allege Defendants committed fraud by misrepresenting facts in order to obtain their

18  signatures on the loan documents.  In order to state a claim for fraud in Nevada, a plaintiff must

19  allege that (1) defendant made a false representation; (2) defendant knew or believed the

20  representation to be false; (3) defendant intended to induce plaintiff to rely on the

21  misrepresentation; and (4) plaintiff suffered damages as a result of his reliance.  *Barmettler v.*

22  *Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).  In addition to pleading these facts, plaintiffs

23  must comply with Rule 9 of the Federal Rules of Civil Procedure, which imposes a heightened

24  pleading standard on all fraud claims.  This Rule requires parties to "state with particularity the

25  circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Pleading fraud with particularity requires

AO 72
(Rev. 8/82)

1    "an account of the time, place, and specific content of the false representations, as well as the

2    identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th

3    Cir. 2007).

4            The Court concludes the Robins have failed to state a valid fraud claim because

5    they have not satisfied Rule 9's heightened pleading standard.  In the Court's view, the Robins'

6    vague, unspecific assertion that Defendants engaged in improper lending practices is not sufficient

7    to meet this standard.  The Robins do not specifically identify the content of the allegedly

8    fraudulent statements, who made them, or when they were made.  In addition, the Robins do not

9    indicate how each individual Defendant engaged in fraudulent conduct: they simply allege that all

10   five Defendants "failed to disclose" important information in the loan transaction.  (Dkt. #1,

11   Compl. ¶ 47.)  This broad allegation is not enough to state a fraud claim against multiple

12   defendants.  *See id.* at 764–65 (plaintiff must "inform each defendant separately of the allegations

13   surrounding his alleged participation in the fraud").  Accordingly, the Court grants Defendants'

14   motion to dismiss the Robins' claims for misrepresentation, fraud by omission, and fraud by

15   obtaining signature by false pretenses.

16       **B.    RICO**

17           The Robins also bring a civil RICO claim against Defendants alleging that they

18   engaged in an "enterprise with the aim and objective . . . to perpetrate fraud upon the Plaintiffs

19   though the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent

20   loan documents."  (Dkt. #1, Compl. ¶ 70.)  To state a cause of action under RICO, a plaintiff must

21   allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing

22   injury to plaintiff's business or property.  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,

23   431 F.3d 353, 361 (9th Cir. 2005).  Because the Robins claim Defendants engaged in this

24   enterprise in order to defraud them, Rule 9's heightened pleading standard applies to their RICO

25   claims.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400–01 (9th Cir.

26   1986).  Consequently, the Robins' RICO claim fails for the same reason their fraud claims fail: the

Robins have failed to plead with specificity regarding the nature of the unlawful enterprise, when and how it was created, and how each Defendant was a part of the enterprise. For this reason, the Court grants Defendants' motion to dismiss this claim.

### C.    Quiet Title

The Robins also bring a quiet title claim asking the Court clear title to the property in their name. An action to quiet title may be brought by "any person against another who claims an estate or interest in real property, adverse to him, for the purpose of determining such adverse claim." NRS § 40.010 (2009); *Del Webb Conservation Holding Corp. v. Tolman*, 44 F.Supp. 2d 1105, 1110–11 (D. Nev. 1999). The Court dismisses this claim because the Robins have not alleged facts to indicate that The Wolf Firm, who filed the Notice of Default on the property, or any other Defendant has an invalid claim to the property. The Robins do not dispute that they are behind on their mortgage payments; instead, they ask the Court to clear title in their name because "Defendants have dirty hands and have not behaved in an equitable manner." (Dkt. #1, Compl. ¶ 53.) Even if this is true, it does not entitle the Robins to title to property when they have not met their mortgage obligations. For this reason, the Court grants Defendants' motion to dismiss the Robins' quiet title claim.

### D.    Contractual Breach of the Duty of Good Faith an Fair Dealing

The Robins also allege Defendants violated their duty of good faith and fair dealing by "engaging in predatory, unethical, unfair, and unsound lending practices" relating to the mortgage agreement. (Dkt. #1, Compl. ¶ 60.) Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). Thus, "when one party performs a contract in a manner that is unfaithful to the purpose of the contract . . . damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991). A party cannot breach the covenant of good faith and fair dealing before a contract is formed. *See Indep. Order of Foresters v.*

*Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("an implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct").

The Robins' claim for contractual breach of the duty of good faith and fair dealing fails because Defendants engaged in their allegedly unlawful and predatory lending practices before the mortgage contract was entered into. Thus, even if the Robins' factual assertions are true, they fail to establish that Defendants were unfaithful to the purpose of the mortgage contract after it was formed. Because the Robins merely allege that Defendants misrepresented material facts before entering into the mortgage agreement, they cannot bring a valid claim for contractual breach of the implied duty of good faith and fair dealing. The Court therefore grants Defendants' motion to dismiss this claim.

**E.   Tortious Breach of the Duty of Good Faith and Fair Dealing**

The Robins also bring a claim for tortious breach of the implied duty of good faith and fair dealing, alleging that Defendants owed them a special duty "by virtue of the trust reposed by Plaintiffs." (Dkt. #1, Compl. ¶ 64.) Although as a general rule, breach of the implied covenant of good faith and fair dealing is a contract claim, this claim sounds in tort when a plaintiff shows that the defendant acted in bad faith despite having owing the plaintiff a fiduciary duty or some other special duty of trust. *A.C. Shaw Constr.*, 784 P.2d at 9–10. Nonetheless, tort liability for breach of the good faith covenant is limited to "rare and exceptional cases," *K Mart Corp. v. Ponsock*, 732 P.2d 1364, 1370 (Nev. 1987), and is appropriate only where "the party in the superior or entrusted position" has engaged in "grievous and perfidious misconduct." *Great Am. Ins. Co.*, 934 P.2d at 263.

The Robins' claim for tortious breach of the duty of good faith and fair dealing fails because neither a special or fiduciary relationship existed between the Robins and Defendants. This is because a lender does not owe a fiduciary or special duty to a borrower absent exceptional circumstances. *See Yerington Ford, Inc. v. Gen. Motors Acceptance Corp.*, 359 F. Supp. 2d 1075,

1  1090 (D. Nev. 2004).  Here, the Robins have not alleged that any special circumstances existed

2  that made their relationship to Defendants anything but that of a typical lender/borrower

3  relationship.  Absent such special circumstances, the Robins cannot maintain a viable claim

4  against Defendants for tortious breach of the duty of good faith and fair dealing.  For this reason,

5  the Court grants Defendants' motion to dismiss this claim.

6  **F.    Civil Conspiracy**

7  The Robins allege Defendants "entered into a conspiracy . . . for the common

8  purpose of accruing economic gains for themselves at the expense of the Plaintiffs."  (Dkt. #1,

9  Compl. ¶ 67.)  In order to state a claim for civil conspiracy in Nevada, a plaintiff must show: (1)

10  defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of

11  harming the plaintiff; and (2) the plaintiff sustained damages as a result.  *Hilton Hotels Corp. v.*

12  *Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (citing *Collins v. Union Fed. Savings*

13  *& Loan*, 662 P.2d 610, 622 (Nev. 1983)).

14  The Robins have failed to state an adequate claim for civil conspiracy because they

15  do not state facts specifically indicating how Defendants acted in concert in order to harm them.

16  In the Court's view, the Robins' conclusory assertion that Defendants engaged in a conspiracy in

17  order to obtain "economic gains" does not state a viable claim under *Twombly* because the Robins

18  do not indicate exactly what the conspiracy was or how each individual Defendant was a part of it.

19  Without this information, the Court has to speculate regarding the specific details of the alleged

20  conspiracy and how it involves each Defendant.  For this reason, the Robins' conspiracy claim

21  fails as a matter of law and must be dismissed.

22  **G.    Unjust Enrichment**

23  Next, the Robins bring a claim for unjust enrichment alleging that Defendants

24  "have been unjustly enriched by their illegal and fraudulent actions."  (Dkt. #1, Compl. ¶ 73.)  To

25  state a claim for unjust enrichment, a plaintiff must allege that (1) the plaintiff conferred a benefit

26  upon the defendant; (2) the defendant appreciated, accepted, and retained the benefit; and (3) it

7

1  would be inequitable for the defendant to retain the benefit without payment of the value thereof to

2  the plaintiff. *Unionamerica Mortgage & Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev.

3  1981). Defendants ask the Court to dismiss the Robins' unjust enrichment claim because a quasi-

4  contract claim cannot be maintained when an enforceable contract governs the dispute giving rise

5  to the claim. The Court agrees. Under Nevada law, unjust enrichment may not be alleged "where

6  there is an express, written contract" that governs the relationship of the parties. *Leasepartners*

7  *Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (D. Nev. 1997). Here, the mortgage contract

8  clearly governs the dispute giving rise to the unjust enrichment claim. Accordingly, the Robins'

9  claim for unlawful retention of funds must be pursued as a contract remedy. The Court therefore

10  grants Defendants' motion to dismiss the Robins' claim for unjust enrichment.

11  **H.    Declaratory Relief**

12  Finally, the Robins bring a claim for declaratory relief and ask the Court to declare

13  that "Plaintiffs are the rightful owners of record of the subject property" and that "none of the

14  Defendants has any right [to] . . . the property. (Dkt. #1, Compl. ¶¶ 87–88.) The Court dismisses

15  this claim because the Robins are not entitled to this declaration. First, the Robins have not stated

16  a legitimate cause of action against Defendants, and thus the Court sees no reason why Defendants

17  cannot foreclose on the property. Second, because the Robins do not allege that they are current

18  on their mortgage payments, they have do not have a legitimate claim to the property themselves.

19  Accordingly, the Court dismisses the Robins' claim for declaratory relief.

20  **I.    Remaining Defendants**

21  The Court notes that only The Wolf Firm and Washington Federal Savings have

22  moved to dismiss the Robins' claims. However, the Court now *sua sponte* dismisses all claims

23  against the remaining Defendants. The Court does so because the Robins make no effort in their

24  complaint to distinguish between the individual Defendants; instead, they lump all claims together

25  against all Defendants. Since none of these claims survive The Wolf Firm and Washington

26  Federal's motion to dismiss, they also fail as to the non-moving Defendants. The Court concludes

AO 72
(Rev. 8/82)

1   that it is in the interest of both judicial economy and justice to dismiss these claims as to the

2   remaining Defendants as well.

3   **III.      Motion to Expunge the Notice of Lis Pendens**

4               Defendants ask the Court to release the notice of lis pendens filed with the Clark

5   County Recorder's office.  NRS 14.010 states that in an action "affecting the title or possession of

6   real property, the plaintiff . . . shall record with the recorder of the county in which the property . . .

7   is situated, a notice of the pendency of the action, containing the names of the parties, the object of

8   the action, and a description of the property."  Defendants correctly note that a lis pendens expires

9   when the underlying claims upon which it is based are resolved.  *See Velasquez v. HSBC Mortg.*

10  *Services*, 2009 WL 2338852 (D. Nev.); *Lee v. Duncan*, 88 Conn. App. 319, 327 (2005).  Here, the

11  Court has dismissed all of the Robins' claims against all Defendants.  Therefore, all claims in this

12  case have been resolved and the Court hereby grants Defendants' motion to expunge the notice of

13  lis pendens.

14                              **CONCLUSION**

15              Accordingly, and for good cause appearing,

16              IT IS HEREBY ORDERED that Defendants The Wolf Firm and Washington

17  Federal Savings' Motion to Dismiss and Motion to Expunge the Notice of Lis Pendens (#7) is

18  GRANTED.

19              IT IS FURTHER ORDERED that Plaintiffs' claims are DISMISSED as to all

20  remaining Defendants.

21              The Clerk of the Court is ordered the close this case.

22              Dated: July 15, 2010.

23

24

25              _____

26              **ROGER L. HUNT**
                **Chief United States District Judge**

AO 72
(Rev. 8/82)